Mr. Lane May it please the Court? Yes, go ahead. President Counsel, Neil Lane. We're certain underwriters at Lloyds. There is a reason why rules of construction often, almost usually, tend to have Latin names attached to them. That's because they're long-standing rules tested through the iterative process that we call the common law. That process does not simply result in the creation or examination of the continued vitality of rules of construction, but their scope, their application, their limits. We're here today because the trial court invented a new rule of construction that could not have been anticipated and which is unwise and which will cause problems in the future if it's continued to be applied in other cases. In this case, the parties filed cross motions arguing over the applicability of an exclusion, exclusion J, concerning the change of control in the insured. In other words, the insurer underwrites for a particular insured, and if there's a change of control, there's an exclusion which provides that for future claims, the underwriters will not be responsible, even though they will continue to be responsible for previous claims. Now, the question was whether the insured's claim was, whether the insured's recovery against claims arising after Stanford Financial Group was placed in receivership, and thus after the receiver came to hold the stock and associated voting rights of Stanford Financial Group. The court concluded that exclusion J was ambiguous and that both parties had offered reasonable interpretations. Now, usually the ambiguous language would be construed against the insurer under the doctrine of contra preferendum in the case with the consumer insurance contract. But the trial court found that Stanford Financial Group, it assumed, was a sophisticated insured. And at this point, the court should have denied the defendant's motion for summary judgment because there was a factual dispute as to the scope of the application of exclusion J. The parties would have been left to offer evidence that would be typical in that circumstance. But instead of doing that, the court, assuming that Stanford was a sophisticated insured, he held that Texas courts would limit the sophisticated insured exception. He assumed that they would apply it, but they would limit it to only cases where there is evidence that the specific language at issue was negotiated. The court even conjectured that it appeared underwriters had drafted exclusion J, failing to draw from the evidence inferences in a light most favorable to the nonmoving party. The court's rationale was a complete surprise. Defendants had not even suggested that this was the rule in Texas. Indeed, the only case that was cited by the trial court, couch on insurance, actually discusses the rationale for the sophisticated insured exception and nowhere says it's limited to the specific language. As we know, it's called the sophisticated insured exception, not the sophisticated insured negotiated provision exception. It focuses on the sophistication and bargaining power of the insured in that case. We cannot say, the court cannot say that this holding was predictive of what a Texas court would hold. No Texas court, federal or state, has ever adopted the rule that the trial court adopted, that limitation on the sophisticated insured exception. Indeed, another court of the Northern District, through Judge Fitzwater, had actually specifically considered that argument and rejected it and bought. Nor has any circuit court of appeals in this country adopted this limitation on the sophisticated insured exception to specific provisions that were negotiated. In that sense, this case is a case of first impression, as was the case below, but we didn't realize it until the court issued its order. The question? You didn't submit any argument on this until your reply brief, but then the court ruled on it anyway. Is that what happened? In reply briefing, the parties filed cross motions. We did submit it on a reply brief. That is correct. That was not objected to. There was no motion to strike that, and the court considered it. It is the basis for the decision now, and therefore it's properly before this court. That was kind of in the question, but the court did decide on that ground. Yes. That's the first argument of your opposing counsel brief. Yes. The court did consider, rely upon it. We did submit a reply brief in connection with the briefing on the cross motions, and it was not objected to at the trial court level. Just an argument or evidence? We put in evidence. Yes. We put in an affidavit on the reply brief. It was not objected to. There was no motion to strike, and the court relied on it in its opinion. Now, there was different evidence that was put in the motion for reconsideration after the court announced his reasoning that the sophisticated insured exception wouldn't apply unless there was specific evidence that the specific policy language had been negotiated. There's something I don't understand factually. Did the receiver have the power to vote on behalf of the entities, or is that the issue that's a factual issue that we still don't know? Well, if you look at the receivership order, the receivership order gave the receiver all the assets that Allen Stanford held, all the assets of the corporation, and every right attendant to those assets. So he received their voting stock, and he received every right attendant to the voting stock. Could he vote contrary to what the SFGC might want, or did he have to vote? Contrary to what the Stanford Financial Group would want? Yes. Did he have to vote as they would want to vote, or did he vote in the best interest of preserving the assets? What is his duty in that regard? Well, let me just make clear. Stanford Financial Group had one shareholder, Allen Stanford. Right. He was incarcerated, and there was no indication ever that he had any indication or any right to object in any way to whatever the receiver did. He attempted to at times, and he was never successful. The receiver is, as we say, as this Court has said, stepped into the shoes of Allen Stanford. Well, that's what I'm trying to understand that in this particular context. This is not my first Stanford case by any means. I'm trying to understand, though, in this context, if he has this right to vote, how is that exercised? And is it clear in this record right now? Okay. Well, all I can say is I don't know the mechanics of how he would vote. All I know is that he was handed the shares as receiver. He was by court order given all rights attendant to all property, including those shares, as receiver, and he has exercised that power time and again. Now, the mechanics of how he would do that, for instance, how he canceled certain leases or sold certain property, he's exercised a panoply of rights in connection with property that was handed over to him. The main thing is this is simply a different risk. This is not the risk that Lloyds underwrote. That is correct, Your Honor. So if you want to talk about how to construe this particular thing that you've just been talking about, the rights and the vote, this is simply a different risk. I believe, Your Honor, it's correct that that's the reason for the exception. They would rather if they were willing to insure Allen Stanford, but not the new team. Well, Your Honor, I believe that is correct. They underwrote for the company before them based on the representations that were made to them, and they did not agree that whoever might acquire the Stanford Financial Group that they would continue to insure their acts, and they had no way to know who that would be. Now, as it turns out, after the change of control, after the voting stock was handed over to the receiver, there were actions taken in Florida with respect to destruction of documents where the government asserted claims against the individuals who did that, and that was, we argued, unambiguously excluded that claim. Now, there are lots of claims prior to the time of the receivership order that continue. So just to put a footnote there, this is not an ipso facto clause. It didn't stop the policy. It just said the policy covers and is enforced for claims up through the date of that receivership. But the court should reverse the trial court for a number of reasons. First, limiting this sophisticated insured exception, as the trial court did, ignores the basis for the contra-preferendum rule and the sophisticated insured exception in the first place. Blandern actually made clear to the Supreme Court of Texas that the rule saying that you should construe ambiguities and exclusions against the insurer is, as the court said there, an outgrowth of the contra-preferendum rule, but it's really indistinguishable from the contra-preferendum rule. It's another aspect of the contra-preferendum rule. And the court there said that the principal reason for this was that the policy sold to consumers are contracts of adhesion and they involve unequal bargaining power. Now, this court actually looked specifically at the circumstances, this rule, the contra-preferendum rule in Eagle Leasing, albeit that was law of Louisiana. And Judge Wisdom said that there was no purpose in following a legal platitude that has no realistic application where the insured has counsel, is represented by a broker, and so forth. And court after court has recognized that the sophisticated insured is not entitled to that contra-preferendum rule where they could grab the pen and change or suggest changes or refuse to agree to language in the policy. And this is especially true, as in Eagle Leasing, Judge Wisdom observed, where these are manuscript policies, where the broker submits the language in the first instance, where both of the parties craft the terms through negotiations. The other problem with this rule is that it's unworkable. It makes no sense because what it says is that we're going to have different rules of construction for different paragraphs depending on whether the sophisticated insured, who had a broker and had bargaining power, decides it's acceptable or it's not acceptable and wants it changed and negotiates it. Does no Texas court recognize this at this point? The sophisticated insured exception? No Texas court whatsoever has said what you are asking us to do today, right? Yes, and for that reason we previously asked, or the Fifth Circuit previously asked the Texas Supreme Court that very question. And what courts have heretofore, other than the Supreme Court of Texas, have assumed is that it would apply based on the same reasoning as, for instance, in Balandron that the contra-preferendum rule, when applied to an insurance contract, is based on contract of adhesion, is based on unequal bargaining power. But as we know, oftentimes there are behemoths seeking insurance coverage where the companies, the insureds, are actually much larger than the insurance company from whom the coverage is sought. And so in that circumstance it's a legal platitude, as Judge Wisdom noted. But in any event, the problem with this rule, and one of the practical problems is if, for instance, a large corporation with counsel and a broker and the resources to have equal bargaining power decides that a language is acceptable and that other language negotiates those two provisions side by side, one would be under this rule, this limitation that the trial court urged, would be construed against the insurer, where the party with bargaining power chose not to change the language, and in the other one it would not be construed against the insured. So you would have different rules of construction, even though the rule is it's the sophisticated insured exception. So it's really a focus, and it always has been, on the sophisticated insured. Well, it just seems to me that just because a party agrees to a particular provision doesn't mean that it didn't have some kind of bargaining power to change it. Yeah, I think that's absolutely correct, Your Honor. I know, for instance, when I have no bargaining power and I enter into a contract with a large corporation, they're going to accept the language that is suggested or that's in the contract because they've chosen to take on that risk or they've chosen that language. The circumstance when you have the bargaining power and you choose not to exercise it to change the terms of the agreement, when you could grab the pen, when you could negotiate it, there should be no distinction with that provision from a provision where you may change the language or propose changes. It's a focus on the sophistication of the insured. Now, we made these arguments in our Rule 59 motion, which exists for this very purpose. When the judge said he focused on whether the particular language was negotiated, he mistakenly said it was not. We came in, we said under Rule 59, after this unanticipated holding, we said, look, here's the evidence that it was. A year after we filed the motion, he denied it in a one-paragraph order, saying that we were making the same arguments that we had previously. Respectfully, we believe that was an abuse of discretion and that he should have granted our motion to reconsider at that time and consider our argument. Does either party think we should try again with the Texas Supreme Court? Well, Your Honor, I believe we haven't asked the court to certify the question to the Texas Supreme Court, so I can say that. I would also say that when it was certified to the Texas Supreme Court, all the same arguments for its application, why the courts in Texas would apply, should apply, were the same as those that were raised in Balandron, the sophistication, the contracts of adhesion. We haven't moved. We believe that the sophisticated insured exception would be adopted in Texas. It's consistent with Balandron already. But the fact that the court keeps not redressing it, it seems to cut against you. If they would just breathe a sigh of relief and say, of course we have this and we don't even need to keep raising this, it seems to cut against you that they ride around it. Well, Your Honor, as Your Honor is well aware, they will decide the case on the grounds that are necessary to decide the case. And in the case where the Fifth Circuit asked them to certify, they actually looked at the question and they said the language is unambiguous. So we wouldn't expect them to then go, and by the way, if it was ambiguous, here's what our hold-in would be. So we can't – I wouldn't say that that cuts against us. I think it cuts for us, having seen many opinions in the Supreme Court, where the court will do one thing and say, but we just want to make clear we don't believe in this, or we have another point to make. And they didn't come out and say the language is unambiguous, but by the way, we would never agree to the sophisticated insured exception. So it's a two-edged sword. I don't believe that a court of limited – you know, an appeals court is required to go beyond the scope of the certified question in that circumstance. Thank you all. Thank you, Mr. Chief. Reserve, hopefully, some time. You've saved time for a rebuttal. Ms. Raffanello. Thank you, Your Honor. Good morning, and may it please the Court. Susan Raffanello appearing on behalf of the insureds and appellees, Thomas Raffanello and Bruce Perot. In this case, the district court properly granted summary judgment in favor of Raffanello and Perot on their motion for summary judgment. It is further appropriately denied the underwriter, Lloyds of London's, motion for summary judgment. And I emphasize those two differing motions, one granted and one denied for the following reason. Just now, underwriter's counsel argued that he was entitled to inferences as the non-moving party. In the instance where he had submitted argument and evidence, albeit belatedly, which I will get to in his reply brief, he was actually the moving party. The district court actually granted the moving party the inference and assumption. Only in his motion. Absolutely, Your Honor. It was never raised in the motion that the district court granted summary judgment in favor of Raffanello and Perot. The entire theory was not raised. That was argued on the stipulated facts and the evidence. Well, but if the court rules on it, it's before us, even if they didn't raise it. We don't infer in his favor that. Your Honor, because the court passed on it, this court does have jurisdiction to consider it. However, the larger question is whether it should exercise its discretion to consider it under the facts and circumstances of the case. And when there is an alternative argument for the granting of the summary judgment, that is that this never should have been considered by the district court because it was in violation of the Northern District Rules of Civil Procedure. The Northern District gets to patrol its own rules, doesn't it? We shouldn't step in and say, well, you should have done this under your rules. That doesn't seem like a very strong argument. Just as in any other rules, Your Honor, I do believe that this court does enforce rules, especially rules on reply. Well, assuming that we didn't agree with that, can you get to your merits argument? Absolutely, Your Honor. There has been no circumstance in which the Texas Supreme Court has recognized a sophisticated insured exception. I'm going to skip the first assumption, per Your Honor's request that the court properly considered the evidence. That was the first assumption underwriters make on appeals. The second assumption is that the Texas court would have, prior to this court rendering its decision, adopted the sophisticated insured exception. That was specifically set forth as a presumption in both the opening brief, where underwriters stated, for the purposes of this appeal, underwriter presumes the sophisticated insured exception will be recognized, and on reply brief, they stated, underwriters address their appeal only to the narrower question of whether the district court's inaccurate prediction regarding the scope, and they bolded and emphasized scope, of that exception under Texas law, presuming that the Texas court would have already adopted the sophisticated insured exception before today. Well, we could assume, arguendo, that the Texas Supreme Court would recognize the exception and still find in your favor by determining that there's insufficient evidence of bargaining power. Absolutely, Your Honor, and there was no evidence. There was absolutely no evidence presented that Stanford was, Stanford Financial Group, let alone the particular insured at issue here, Rathenel and Perot, were sophisticated insured. The court specifically simply noted in a footnote that it was assuming that to be the case. There was no actual evidence of any kind at any time put before the court that that was the case. It was simply an assumption granted to the benefit of underwriters in interpreting the potential posit of the law. To this day, however, there's two different things. Yes, this court could find that Texas law would hold the sophisticated insured exception exists. I don't believe that Texas law supports that, and I will get to that. Secondarily, even if it did recognize it, Texas courts have a long history of making coverage provisions and exclusion provisions under differing standards. To this day, as has been acknowledged by underwriters, no Texas court has adopted the sophisticated insured exception. Far from there being a substantial body of case law, as underwriters argued, there is no body of case law to assist this court under Texas law to determine whether it would be accepted, and if it was accepted, what would its scope be? Unlike the other courts in the other states, New Jersey, Louisiana, Ohio, and Missouri, that either a federal court or a state court has accepted the sophisticated insured, Texas law is very different. In those circumstances, the Eagle leasing case was the frontrunner, interpreted Louisiana law under the civil code. Under that civil code, the sole reason for the contra preferentum exception was a drafting issue. Who drafted the agreement? And that was the genesis in 1976 of other cases that were following the sophisticated insured exception. Here, however, in Texas, Texas bases its contra preferentum law, or, as the Supreme Court just indicated, also known as the ambiguity rule, distancing itself from the pure Latin there, that the favor will go to the insured if they offer a reasonable position, is not simply on bargaining power and on who drafted the insurance policy. Instead, Texas, unlike those other states, has repeatedly declared that it is the public policy of the state of Texas to interpret insurance policies in such a manner that they insure. That is especially so for exclusions, where Texas has consistently held that a strict, a very strict construction of exclusionary provisions needed to be made, and if an insurance company wanted to avoid coverage under an exclusionary provision, which is at issue here, it could do so under plain and unambiguous language. And if it did not, it could not be heard to complain that insurance was, in fact, covered. Since the Fifth Circuit's decision in Eagle Leasing interpreting Louisiana civil code in 1976, the Texas courts have had almost 40 years to rethink their canons of construction or to rethink their pronouncements of public policy, but instead, Texas courts have steadfastly adhered to the canons of construction that if an insured offers a reasonable interpretation of the policy provision, that interpretation will control and coverage should be the policy. Is there any reason why we should wait in this case to see about the rehearing and then the Deepwater Horizon case before the Texas Supreme Court? I don't believe that there is. To my knowledge, and I'm not involved in that case, the rehearing is really focused on the front. Oh, go ahead. The rehearing is really focused on some discrete issues within the first argument, and I don't believe that the second argument would be passed on in any event. I may very well be wrong, and I'll candor on that. This court has also recognized, when certifying the question of In re Deepwater Horizon, that the Texas rule derives in part, in two different places in that opinion, the Fifth Circuit used the phrase in part or partially to say that Texas rule derives in part from unequal bargaining power. The other part of this, which really sets Texas apart, is the rule that it is the public policy, as I've stated before, to provide for insurance coverage. And indeed, this court, interpreting this very exact same policy for the executives, Stanford, Pendergrass Host, Curt, and Lopez, announced the appropriate rules of construction for this exact same policy and held in favor of the executives in that decision, stating that because they advanced a reasonable alternative of what an in-fact determination would be, the executives' interpretation would prevail. Now, however, under Reuters, seeks to have this court employ differing canons of construction on the exact same policy for Raffanello and Perot, arguing no basis for the distinction of why there should be differing canons of interpretation for the exact same policy. ...involving the other officers involved acts that were committed, or alleged, anyway, before the bankruptcy or before the... That's correct. They had been... It's not the same time frame. It is not the same time frame, but it would be the same canons of interpretation, which is the point I'm making as far as which ambiguities should control. And again, from a legal perspective, there is no rational reason to change Texas canons of construction. There's no reason, from a rationale perspective, to adopt the sophisticated insured. The canons of construction employed by Texas have been consistent for literally decades. Insurance companies know this. Insureds know this. Insurance companies know insurance. By any reasonable measure, even a giant corporation, which obviously Raffanello and Perot are not, professional insurers are far more sophisticated about insurance coverage matters than they're insured in virtually every case. From a practical perspective, there is also an entire can of worms that would be opened by the adoption of a sophisticated insured exception. As matters currently stand, all parties know what the rules of policy interpretation are and how policies will be construed. They are applied uniformly and relatively efficiently by the courts interpreting policies as a matter of law. They are construed by their written terms and coverage determinations made, most typically at summary judgment, often, as in this case, on stipulated facts. Under a sophisticated rule exception, however, nearly every coverage case, at least if it involved a corporate policyholder, could devolve into a required fact-intensive and case-specific inquiry into the insured's relative sophistication. Uncertainty would reign, and coverage litigation and judicial burdens would increase. Indeed, this case highlights some of the perils in adopting that sophisticated insured exception. In the case of a receivership and dissolution, two individuals, who happen to be employees of the company, are now faced with the prospect of trying to do discovery into whether their employer was sophisticated or not. What was the negotiation of this policy? Who even would know this information? Underwriters doesn't have that problem. They go to their own employers or their own syndicates, and they find out. What inquiries would determine whether a party is sophisticated? Is it its gross revenues? Was it its profits, its number of employees? In this case, we don't have any evidence, as the court recognized, of whether Stanford was sophisticated or not. Indeed, the subsequent cases in the criminal court cases show it was a house of cards. What guidance, if any, do we get from the case law from the states that have recognized the exception in terms of what you're talking about, the degree of discovery or inquiry that's necessary, and how the courts have resolved that? It's across the board, Your Honor. Whether there's all sorts of a litany of questions posed in those opinions, the size of the corporation, whether they had specific lawyers dedicated to insurance, whether they had brokers hired, whether they had risk managers, whether they had revenues, but there has been no list of factors, so to speak, that one would consider in determining whether one was a sophisticated insured. Notably, also in those cases, in each and every one of those cases, the corporate policyholder, as opposed to individual insureds, additional insureds, were at issue. This case is obviously quite different in that regard as well. And again, those states presume solely that the rule applied because of unequal bargaining power and the negotiation of a specific policy and not due to public policy. Sometime before you finish, I would like to have you talk about the first issue, at least as I see it, which is whether this provision is ambiguous, exclusion J. Thank you, Your Honor. I'll turn to that now. It is absolutely not ambiguous, in my view, and that was also argued and is an alternative basis for affirming here. We heard opposing counsel get up here today and say that this was a change of control provision. It was not. Respectively, that was not the words used. Instead, what was used was the phrase that the policy did not cover any act at a time when another entity or individual holds a majority of voting rights in Stanford Financial Group Company. Notably, this provision does not reference control, does not reference the appointment of a receiver, despite another policy entered into in the same time frame doing so. And underwriters even had the... But you're talking about a majority of the voting rights. I mean, why isn't that talking about control? Because, Your Honor, there's different ways to maintain control. We are not arguing that the receiver did not have control of the company due to the judicial court order of receivership. However, he did not have, and even the receivership order carved out, the legally recognized privileges of the individual, Alan Stanford. Alan Stanford maintained his voting rights. He may not have been able to exercise them. He could not override the receiver's authority that he garnered solely through the court system. That is, the receiver is an arm of the court for these purposes. But that does not mean, and in fact, Texas law and Florida law make clear that in order to be able to vote, as opposed to holding something in possession, the order had to make clear that that voting right was being transferred. And in this case, it was not. In fact, it was the exact opposite, because, again, the original order of receivership only included the legally recognized privileges of the entity, also bearing in mind that the entity of Stanford Financial Group Company that we're here on today was not subject to the initial receivership order. So the timeline is February 19th. The initial receivership order came down, excluding legally recognized privileges of individuals as opposed to the entities. Subsequent to that were the wrongful acts during the last week of February 2009. Come March 12th, 2009, I would acknowledge, Your Honor, the receivership order became much more clear for two reasons. Number one, Stanford Financial Group Company was named under the receivership order as a defendant in that case. And number two, the court specifically found, for the first time, that the receiver was to take the business and financial control of Allen Stanford. That was not until March 12th, 2009, that those things occurred. Had the receiver, on February 19th, through the initial receivership order, had the right to vote, Allen Stanford shares of stock in Stanford Financial Group Company, despite it not being a named entity under that receivership order, the March 12th amended order is completely superfluous. That was not necessary. All right. When were the acts complained of here? Prior to March 12th, 2009, February 25th through February 29th. So it was not until March 12th, 2009, that arguably the district court had granted the voting rights to Allen Stanford. Prior to that time, the right to vote the stock remained in Allen Stanford, despite the fact that the court controlled, through the receiver, the actual operations. We're not here arguing that had Allen Stanford showed up at a shareholders meeting and voted his stock, that the receiver wouldn't have laughed, but he had the right to do it. There might have been some objection. But he had the legal right to do that. And that's why we believe that this provision is not ambiguous. It's also because of the factual timing in this case. I think had the wrongful act occurred out of March 12th, 2009, we would not be able to argue no ambiguity. But because it did not, we believe it's clear that the voting rights, not a change of control, this is not a change of control provision, that the voting rights had not been had. The last few answers were most responsive and helpful, helping us from the record. But I thought that Lloyd's had waived the issue of ambiguity, quite specifically in its opening brief on appeal. So that issue is not really before us, is it?  I was attempting to respond. Oh, no, I perfectly understand. It was a fair question and a good answer. But to me, we seldom see something waived so specifically in the opening brief, but here it is. Right. Both in the opening brief and even in the reply rebrief, they specifically confined it to the scope of the sophisticated insured exception. Obviously, we believe that there are a variety of reasons that the court can affirm the district court's order to include the reasoning established in that order. Again, we are here on a very narrow issue of an exclusion. The district court did not say, oh, I truly believe that the Texas courts will adopt the sophisticated insured exception. He was giving to Lloyd's of London the benefit of assuming, lots of assumptions in this motion, assuming that Stanford was a sophisticated insured despite no evidence, assuming that sophisticated insured exception would apply despite it being raised in all evidence of it being submitted in reply brief, but then said, even if I assume that, Texas law will not stretch as far. At most, it would require some more specific findings, which Lloyd's had not submitted before. So is the easiest way for you to prevail to say, even assuming that they're sophisticated, there's no evidence here that they were? Is that the easiest way for you to prevail? That is definitely one way for us to prevail. I don't know if I have ranked the variety of ways to prevail. In my head, I think in my view, the easiest way to prevail is to recognize that the Texas courts have never recognized the sophisticated insured exception at all, therefore not even having to get to the inquiry. And perhaps the second easiest way is as Your Honor has indicated. All right. Thank you. Thank you. Ms. Raffanello, Mr. Lane, you've saved time for rebuttal. Your Honors, I'd like to first clarify something, and that is because I must address the argument as to the ambiguity of Exclusion J because it was discussed during Appley's presentation. Appley's concede that control of the company was transferred, but somehow Allen Stanford, held in prison, was kept his voting rights. Even though he couldn't exercise them. It's very important. That is not what the trial court said. Judge Godby, at page five of the order that's being appealed from, held that his order of February 17, 2009, transferred the voting rights. It's right there in black and white on page five of his order. And he's the one who entered the order, and he's the one who signed that order, and he's the one who interpreted it in the order that's being appealed from. He said that the rights were transferred. Now, as to this argument that somehow it would really be a real question as to whether a party was sophisticated or not, there was no mystery whether Stanford Financial Group was a sophisticated insured as that doctrine has been applied in courts, including in courts in this circuit. The reply, the evidence in the reply, actually made the point that this is a negotiated policy, that Stanford was represented by Willis, the largest broker in the world. And that is enough in every jurisdiction that has considered the question of the sophisticated insured exception. It is enough that the party is represented by a broker because the way it works, as Judge Wisdom wrote in his opinion in Eagle Leasing, the way a policy in the London market works in this kind of situation, a manuscript policy, is that the broker comes, the broker presents language, and that it's negotiated off the broker's language. But in any event, the only inadequacy that Judge Godby identified with the evidence that he considered that was submitted on reply was he said there wasn't specific evidence that exclusion J was negotiated. He didn't doubt that there was evidence that this was a sophisticated insured, but what he said was, assuming that they're insured, because the evidence that he considered, and he did not strike or exclude, stated that they were represented by Willis, this was a negotiated policy, and that would, in any event, fall within the ambit of the sophisticated insured exception. Now, the Holt decision was argued to you as a case that says, of this Fifth Circuit, that in that case somehow contra preferendum applies and that exclusion must be construed strictly against the insured, even where there's, you know, a sophisticated insured. Well, in fact, that issue was not, no one argued ambiguity in that previous decision, and that language about the language being construed, ambiguous language being construed against the insurer is actually consistent with the contra preferendum rule, and it's in language talking about the interpretation of contracts that's often included in opinions, but no one argued that there was an ambiguity, so it never came into play. The court never said, and this language is ambiguous, and therefore we're construing it against the insurers. Indeed, there's a careful consideration of the money laundering exclusion is what occurs, and it was remanded for further proceedings. You're saying the district court never said it was ambiguous? The district court in the previous, on the money laundering exclusion, the Holt case, did not involve an argument about ambiguity. It was an ambiguous provision that was at issue. Well, what about here? I mean, the issue that Judge Smith has pointed out is that as he reads your brief, you're conceding. You're not even discussing ambiguity. We're appealing from his new rule of construction, which was dispositive in this case, which was the actual fulcrum upon which his order turned. That is correct. So we don't decide here whether this provision is ambiguous. We have not. The ground that we have appealed on is that he stated an incorrect basis for his ruling, and that it should not be, and that it should be reversed. There's no such limitation on the sophisticated insured exception, and it was outcome determinative. But you're not challenging the district court's determination on ambiguity on this appeal? We have not. That wasn't our ground for appeal. Obviously, we made the argument below that it unambiguously favored us, but what concerns us is this new rule of construction that will have an impact in other cases, not only before him but throughout the circuit. I have to say I don't understand. Why is it that you're not arguing that this provision is not ambiguous? I mean, to me, that's the easy out here. But you're not arguing it, so you may just have shot self in foot. Well, I would just say this. We have to select what we're going to appeal on, and the judge below said that there were two reasonable interpretations, but he announced a new rule of construction that he said was dispositive against my clients, against appellants. And so the decision has to be made at that point. Do we appeal on ambiguity when he said there are two reasonable interpretations? Do we want to challenge that? Do we want to challenge the new rule of construction that he coined that has dramatic effects on insurers throughout this state and throughout the circuit? Are you really arguing the second point of your brief, that the court abused its discretion in not counting your other evidence after you were the one to raise it in the reply brief? I mean, weren't you lucky to get in the evidence you did, and so you shouldn't be challenging the abuse of discretion, not letting in the other evidence? Well, I consider myself fortunate in many things, but in that case I do think the court properly considered the evidence that had been submitted. It wasn't subject to an objection, so he did. Right, but you're challenging the court. Are you really challenging the court that it abused its discretion here and not considering your other evidence? Absolutely, and here's why. Because what he said in his opinion was even if you're sophisticated, there is no evidence that you negotiated this specific provision. You've given me evidence that the insured was sophisticated, but you haven't given me evidence that this particular provision was negotiated, and that is a new rule of law that we couldn't have anticipated, that no one could have anticipated because no Texas court has ever adopted that limitation on the rule. And so when we saw that, we said, well, we need to bring to the court's attention that indeed this provision, not just the entire policy which he conceded, he says it was negotiated, and the evidence before him they were represented by a broker. That's all before him, and that should be sufficient. But he said no, because there's a lack of evidence on one particular provision. We said, well, Your Honor, here it is. Here Willis actually gave us the language of all the policy. It was theirs. If it's contra preferendum, it should be against the drafter Willis in this case. That's the whole essence of the sophisticated insured. So I would say under that circumstance, that's what the rule is for. Now, I never file motions for reconsideration. I don't like to do that. But in this case, we saw that he had coined a new rule and that there was specific evidence that was applicable and refuted the application of this new rule that we'd never seen before. And that's why we came to him and said, Your Honor, take a look at this. This really is not the right outcome. We believe the abuse is discretion and refuse to consider that. Thank you, Mr. Lane. Your case is under submission. The last case for today, Johnson v. Williams.